UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECUNDINO GARCIA PICHARDO, *et al.*,

                              Plaintiffs,

-v-

BOSTON POST FOOD CORP., *et al.*,

                              Defendants.

22-CV-9157 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiffs bring this wage-and-hour action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; New York Labor Law ("NYLL") §§ 190, 650, *et seq.*; and New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. L. §§ 195, *et seq.*; against Defendant Boston Post Food Corp., *d/b/a* C-Town, alleging violations including failure to pay wages and spread-of-hours premiums, failure to provide wage-and-hour notices, and failure to provide wage statements.[1] Defendant failed to retain counsel after its initial counsel withdrew. As a result, Defendant has defaulted. Before the Court now is Plaintiffs' motion to certify a class pursuant to Federal Rule 23, which Plaintiffs filed concurrently with their motion for default judgment. For the reasons that follow, the motion for class certification is denied.

---

[1] In a telephone conference with the Court held on October 15, 2024, counsel for Plaintiffs indicated that they were abandoning any remaining claims against "C-Town Supermarkets 1-20," and seeking class certification with respect to only the primary location at which the three opt-in plaintiffs worked—4008 Boston Road, Bronx, NY 10475. (*See* ECF Nos. 75-77 (declarations of opt-in plaintiffs).) Therefore, although Plaintiffs make a passing reference to "C-Town Supermarkets 1-20" in their memorandum of law supporting class certification (ECF No. 72 at 6), the Court dismisses those parties from the action.

I.  **Background**

Plaintiffs are former employees of a supermarket, C-Town, located in the Bronx. (ECF No. 75 ("Pichardo Dec.") ¶ 1.) That supermarket is operated by Boston Post Food Corp. ("Defendant"). (Pichardo Dec. ¶ 2.) Initially, this action had two named plaintiffs—Secundino Garcia Pichardo and Eric Ratzlaff. (ECF No. 1 ("Compl.") ¶¶ 6-7.) Ratzlaff later voluntarily dismissed his claims without prejudice (ECF No. 19) and Pichardo moved to conditionally certify an FLSA collective including other employees of C-Town (ECF No. 28). The parties then stipulated to conditional certification of a collective including "all current and former non-exempt employees employed by Defendant at any time between October 25, 2019 and [August 14, 2023]." (ECF No. 41.) To facilitate the mailing of opt-in notices, Defendant produced a list of eighty-four employees, with mailing addresses for fifty-three of them and valid phone numbers for eighteen of those without mailing addresses. (ECF No. 45; *see also* ECF No. 91 ("Supp. Letter").) Plaintiffs mailed opt-in forms to the fifty-three individuals with addresses and texted collective notices to the individuals with phone numbers. (ECF No. 91.) Two additional plaintiffs subsequently opted in to the action—Emmanuel Diaz (ECF No. 56) and Jaedin M. Nunez (ECF No. 63). Along with the employee list, Defendant produced "a sampling of documents" including "attendance summaries," "employee time cards," "payroll check registers," and "payroll summary reports." (ECF No. 45 at 1 (capitalization altered).)

On October 30, 2023, defense counsel filed a motion to be relieved as counsel (ECF No. 51), which the Court granted on November 13, 2023 (ECF No. 54). Due to failure to retain counsel (*see, e.g.*, ECF No. 59), Defendant defaulted, and a Clerk's Certificate of Default was entered on February 16, 2024 (ECF No. 62). Plaintiffs subsequently moved both for a default judgment as to Boston Post Food Corp. (ECF No. 78) and for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (ECF No. 71), filing supporting memoranda of law

for both (ECF Nos. 84, 72 ("Mem.")). The Court issued a default judgment as to liability at an oral hearing on October 15, 2024, but reserved judgment as to damages and Plaintiffs' motion for class certification.

## II.    Legal Standard

To qualify for class certification, Plaintiffs must demonstrate that their proposed class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a) . . . are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). If the requirements of Rule 23(a) are met, Plaintiffs must then establish that certification is appropriate for one of the three reasons set forth in Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

In circumstances where a defendant has defaulted, a plaintiff may pursue class certification if it does so before "entry of default judgment." *See Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (summary order); *see also Telford*

*v. Ideal Mortg. Bankers, Ltd..*, No. 09-CV-5518, 2010 WL 3924790, at *3 (E.D.N.Y. Aug. 17, 2010), *report and recommendation adopted without objection*, 2010 WL 3909313 (E.D.N.Y. Sept. 27, 2010) (allowing the plaintiff to move for class certification despite having first filed a motion for default judgment); *Winegard v. Crain Commc'ns, Inc.*, No. 20-CV-01509, 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021) (denying certification where the plaintiff "failed to file a motion for class certification pursuant to Rule 23," and where "his motion for default judgment does not address Rule 23 class certification"). That is true even if the motion for class certification is filed after the plaintiff has "requested and obtained a certificate of default from the clerk of the court." *Acticon*, 687 F. App'x at 12. A motion for class certification "should 'be denied as untimely only when the late timing of the determination may cause prejudice or unduly complicate the case.'" *Id.* (quoting 7AA Wright & Miller, Fed. Prac. & P. § 1785.3 (3d ed.)) (brackets omitted). A motion is not untimely if a "defendant[] had ample notice that the action was a putative class action," such as where "the caption and prayer for relief in [the plaintiff's] prior complaints indicated its intent to seek class status . . . ." *Id.*; *see also In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14-CV-7990, 2017 WL 4541434, at *4 (S.D.N.Y. Oct. 10, 2017) (finding adequate notice where "Plaintiffs' Complaint describes its allegations as a 'Class Action' with 'Class- and Collective-Wide Factual Allegations'" and "Plaintiffs [have] also moved for and have been granted collective certification for their FLSA claims"); *Huang v. Shanghai City Corp,* No. 19-CV-7702, 2022 WL 1468450, at *8 (S.D.N.Y. May 10, 2022) (same).

**III.   Discussion**

    **A.   Class Certification**

Plaintiffs request to certify a class of "all non-exempt employees . . . employed by Defendant[] . . . on or after October 25, 2016 to the present." (ECF No. 74-1.) Because they

4

have failed to show, by a preponderance of the evidence, that common issues of law and fact predominate over individualized issues, the Court denies their request.[2]

"Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121 (2d Cir. 2022) (quoting *Johnson*, 780 F.3d at 137). "The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson*, 780 F.3d at 137. However, "[w]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

"The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quotation marks omitted). Although similar, "[i]t is well established that the predominance criterion of Rule 23(b)(3) is 'more stringent' and 'far more demanding' than the

---

[2] While "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly," the Court can identify no smaller sub-class that would resolve the problems with commonality and predominance identified in this Opinion. *Cf. Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

5

commonality requirement of Rule 23(a)." *MacNamara v. City of New York*, 275 F.R.D. 125, 144 (S.D.N.Y. 2011) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Accordingly, the commonality requirement is often "subsumed under, or superseded by" the predominance requirement. *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015) (quoting *Amchem Prods.*, 521 U.S. at 609). While Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof," it does require "that common questions predominate over any questions affecting only individual class members." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (cleaned up). While "damages questions should be considered at the certification stage when weighing predominance issues," the mere fact that a case "involve[es] individualized damages calculations" does not "foreclose the possibility of class certification under Rule 23(b)(3)." *Roach*, 778 F.3d at 408.

Here, while Plaintiffs allege that Defendants violated various labor laws as a matter of company-wide policy, they provide minimal support for that allegation. (*See* Mem. at 20.) Plaintiffs' primary evidence consists of declarations by three employees. (ECF Nos. 75-77.) Two of those employees—Diaz and Nunez—filed nearly identical[3] statements addressing only their own experiences. (ECF Nos. 76, 77.) The third employee—Pichardo—filed a longer declaration both discussing his own experiences and attesting that "[b]ased on . . . personal observations and conversations with co-workers, [he] know[s] that all employees . . . were subject to the same wage and hour policies." (Pichardo Dec. ¶ 4; *see also id.* ¶¶ 6-7, 11-14).

---

[3] *Cf. Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10-CV-1335, 2012 WL 7620734, at *6 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) (discounting "the carbon-copied paragraphs in the declarations" submitted by class representatives).

However, Pichardo identifies only five such employees with whom he "regularly spoke" concerning wages and employment policies, and does not provide further details for any specific "observations" or "conversations." (*Id.* ¶ 4.) Pichardo's declaration also contains a number of imprecisions and qualifications, such as "[o]ther employees . . . also worked the same *or similar* hours." (*Id.* ¶ 5 (emphasis added).)

While "employee-plaintiffs can rarely point to an explicit policy of their employer that is violative of their rights" and "proof of de facto policies has therefore become the coin of the realm," putative class plaintiffs must still "present enough evidence to confidently suggest a uniform, or nearly uniform, practice." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015), *abrogated on other grounds by Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020). "[T]his evidence entails either (i) comprehensive statistical analyses or (ii) anecdotal evidence that reaches a certain critical mass." *Id.* "Limited, anecdotal evidence concerning a de facto compensation policy is insufficient to establish commonality." *Fernandez v. Wells Fargo Bank, N.A.*, No. 12-CV-7193, 2013 WL 4540521, at *5 (S.D.N.Y. Aug. 28, 2013).

Here, Plaintiffs have failed to show any issues common to their proposed class, much less that such common issues predominate over the plethora of individualized issues. Plaintiffs have no statistical analyses, and anecdotal evidence from just a few employees. This is not enough for the Court to be confident that Defendants treated all or most employees uniformly. This is particularly true because none of the testimony here addresses whether all of the class members worked for the same supervisors, or whether all supervisors engaged in the same unlawful practices. *Cf. Ruiz*, 93 F. Supp. 3d at 290 (noting the defendant's policy of delegating discretion to managers and the plaintiffs' failure to "demonstrate[e] a relatively uniform response across branch managers"). Furthermore, "much of the testimony relied on" falls "well outside the

7

bounds of what [plaintiffs] might personally know," such as Pichardo's recollection of casual conversations he had with fellow employees. *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 45 (E.D.N.Y. 2016) (quotation marks omitted). Pichardo provides "no dates (not even approximations) of when these communications took place," and "identif[ies] none of the speakers or participants in these communications." *Fernandez*, 2013 WL 4540521 at *8. The value of such testimony "as proof of a common policy is limited because of the lack of detail concerning the underlying communications." *Id.*; *see also Mendez*, 314 F.R.D. at 47 ("[T]hese conclusory statements lack the kind of precision and detail from which the Court might infer a uniform policy on the part of the Individual Defendants to deny compensation to their employees.")

The problem here is magnified because Plaintiffs do not just claim violations of notice requirements, which are one-time violations with fixed statutory penalties, but also allege recurring failures to pay overtime and spread-of-hours premiums, and time-shaving associated with meal breaks.[4] While Plaintiffs do purport to have evidence—received in discovery before

---

[4] Even as to the alleged notice violations, Plaintiffs do not adequately establish that Pichardo's coworkers were similarly situated to him, or that they were otherwise subject to the same notice practices. Differences in formality of employment, amount worked, immigration status, and more might affect how employees' payroll communications were handled. Pichardo's largely conclusory declaration fails to address any of these potential complications. Moreover, even if Plaintiffs were able to satisfy the predominance requirement with respect to their wage notice claims, the Court would still deny class certification due to considerable "difficulties likely to be encountered in the management of a class action," a consideration that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-MD-1628, 2008 WL 5661873, at *3 (S.D.N.Y. Feb. 20, 2008) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974)). Specifically, Plaintiffs' counsel have thus far had no confirmed contact with the vast majority of the employees they have identified, and have identified only half of the employees in the proposed class. (*See* Mem. at 18 (estimating a class size of 168 by doubling the size of the collective list Defendant produced before defaulting.) "It is readily apparent that no matter how easy it is to establish damages on a class level, if it is extremely difficult or almost impossible to distribute these sums to their rightful recipients, the

Defendants defaulted—of the hours worked by a large number of employees, they do not have evidence that all of these employees were similarly underpaid. Therefore, this is not a case where individual damages inquiries can be "easily resolved because they will likely involve simple mechanical calculations based on the defendant's payroll records." *Cf. Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 276 (E.D.N.Y. 2016).

For example, Plaintiffs claim to have evidence that employees were not compensated for working during their lunch breaks. (*See* Mem. at 9.) However, all the data actually show is that employees regularly clocked out of work for roughly half-hour lunch breaks. Plaintiffs' allegation that they "were not always relieved from their work and permitted to enjoy a free and clear meal break" is based solely on the anecdotal testimony from Pichardo, and to a lesser extent Diaz and Nunez. (*See id.* at 9-11; *see also* ECF Nos. 74-3, 74-4.) Thus, to prove violations and damages, each class member would need to submit individualized proof of days they were required to work through their breaks.

Similarly, Plaintiffs present data showing when employees worked spread-of-hours days (*see* ECF Nos. 74-5, 74-6) and claim that "Defendants' production of pay records show[s] that spread-of-hours premiums were never paid" (Mem. at 12). But fewer than half of the employees in Plaintiffs' data worked at least one spread-of-hours day, and fewer than ten employees worked more than ten spread-of-hours days. (*See* ECF No. 74-6.) If anything, this amplifies the dissimilarity between the employees in the putative class and makes it less likely that common issues would predominate. In addition, the fact that a minority of employees were not paid

---

class is unmanageable." *Fresh Del Monte Pineapples*, 2008 WL 5661873, at *10 (quotation marks omitted). Here, the Court is unpersuaded that Plaintiffs' counsel will practically or affordably be able to find and notify the putative class members, roughly half of whom may not exist at all.

spread-of-hours premiums does not show that all employees either worked spread-of-hours days, or that employees were not compensated for such days as a matter of company policy or practice. And while Plaintiffs assert that Defendants produced pay records for roughly eighty employees, none of those records are attached to Plaintiffs' motion for class certification. The Court is therefore skeptical of Plaintiffs' conclusory assertion that "Defendants' production of pay records show that spread-of-hours premiums were never paid." (Mem. at 12.)

Finally, the evidence Plaintiffs do provide reveals considerable discrepancies among the hours worked by individual employees. For example, it appears that one employee worked significantly more spread-of-hours shifts—more than double the amount of the employee with the next highest number of days with spread-of-hours shifts, and nearly thirty times the average number of spread-of-hours shifts per employee. (*See* ECF No. 74-6 at 2-3.) The Court cannot be confident that employees were not paid or otherwise treated differently given such stark differences in their hours worked.

Insofar as the above issues create commonality problems under Rule 23(a), they also undermine predominance under Rule 23(b)(3). While similar to the commonality inquiry, predominance also requires that "the common issues can profitably be tried on a classwide basis" and that they will not be "overwhelmed by individual issues." *Johnson*, 780 F.3d at 138. "Accordingly, the predominance inquiry is 'more demanding than Rule 23(a).'" *Mendez*, 314 F.R.D. at 50 (quoting *Comcast*, 569 U.S. at 33). Because Plaintiffs have failed to prove the existence of a common policy, "the Court would have to engage in individualized inquiries to determine whether supervisors deviated from those policies to require [employees] to perform overtime work, work before or after their shifts, or work during meal-time breaks for which they

were not properly compensated." *Id.* Such inquiries would overwhelm the aspects of the putative class action susceptible to generalized proof.

Accordingly, because Plaintiffs have not demonstrated commonality, pursuant to Rule 23(a), or predominance, pursuant to Rule 23(b)(3), the motion for class certification is denied.

### B. Default

Following a telephone conference on October 15, 2024, the Court granted Plaintiffs' motion for default judgment as to liability, but reserved decision as to damages in light of Plaintiffs' pending motion for class certification. Having denied certification, the Court may now consider damages as to Plaintiffs Pichardo, Diaz, and Nunez. However, Plaintiffs' damages calculations and the sum expressed in Plaintiffs' proposed default judgment concern the entire class, not Pichardo, Diaz, and Nunez alone. (*See* ECF No. 79-8 (requesting $2,970,903.50).) Plaintiffs are therefore directed to file a letter within thirty days of the entry of this opinion setting forth the proposed individual damages they seek.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED.

Plaintiffs are directed to file a letter within thirty days of the entry of this opinion setting forth proposed individual damages and the basis for each element of damages, including interest, attorney's fees, and costs if applicable.

The Clerk of Court is directed to close the motion at Docket Number 71 and to terminate "C-Town Supermarkets 1-20" as parties.

SO ORDERED.

Dated: April 16, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge